UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARLEY BASS, on behalf of
herself and on behalf of all
others similarly situated,

    Plaintiffs,

v.                        CASE NO:

MED-CALL HEALTHCARE,
INC., and RISHER DUMPIT,
individually,

    Defendants.
_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Named Plaintiff, Sharley Bass ("Bass"), on behalf of herself and all others similarly situated ("Putative Class") (collectively "Plaintiffs"), files this Class Action Complaint against Defendant Med-Call Healthcare, Inc., ("Defendant Med-Call"), and Risher Dumpit ("Defendant Dumpit") (collectively, "Defendants") and states as follows:

1. Defendant Med-Call is a national corporation that links health care professionals with assignments nationwide.

2. Defendants' policy and practice is to deny earned wages and overtime pay to its nurses -- hourly employees – for travelling to and operating at vaccination sites throughout the nation.

3. Defendants' deliberate failure to pay Plaintiffs their earned wages and overtime compensation violated the Fair Labor Standards Act ("FLSA").

4. In fact, Defendants' terms for employment included an hourly rate plus pay for travel time to different vaccination sites as it directed. This is a uniform corporate policy that applies on a nationwide basis.

5. Plaintiffs worked as nurses located throughout the United States. Named Plaintiff Bass worked as a Registered Nurse in Florida, and was directed by Defendants to operate at two different locations, one in Fort Lauderdale and another in Venice.

6. This lawsuit is brought as a collective action under the FLSA to recover overtime and unpaid wages owed to Plaintiffs and all other similarly situated workers employed at Defendants' vaccination sites. Specifically, Plaintiffs seek to have certified a nationwide collective action comprised of the following:

> **All current and former nurses who worked for Defendants any time during the last three (3) years, within the United States at designated vaccination locations, who were not paid overtime for all hours worked in excess of forty in a given week.**

7. The FLSA regulations governing travel time are applicable to Plaintiff and those she seeks to represent.

8. Plaintiffs and similarly situated employees engaged in travel at the direction of Defendants to multiple vaccination locations in order to administer the COVID-19 vaccine during the global pandemic.

9. It is Defendants' policy and practice not to pay Plaintiffs, and all other similarly situated Plaintiffs for their work time and, consequently, Plaintiffs, and all other similarly situated Plaintiffs are consistently working "off the clock" and without pay.

10. Accordingly, Plaintiffs and all similarly situated employees are entitled to compensation for the time they spend travelling to and from the multiple vaccination locations as directed by Defendants.

## JURISDICTION AND VENUE

11. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

12. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this jurisdiction.

## PARTIES

13. Defendant Med-Call is an Illinois corporation with its principal place of business in Illinois.

14. Defendant Med-Call does business in the State of Florida, including in this District.

15. Defendant Dumpit is the Chief Operating Officer of Defendant Med-Call and is a resident of Illinois.

16. Plaintiff Sharley Bass is a resident of Sarasota, Florida, and is a former employee of Defendants. Plaintiff worked for Defendants in this District.

## GENERAL ALLEGATIONS

17. Defendants operate healthcare staffing projects in numerous states across the country, including, but not limited to Florida and Illinois. The projects staffed by Defendant Med-Call collectively employ hundreds, if not thousands, of putative class members.

18. The principal job duty of Defendants' healthcare professionals for the vaccination project it operated, like Bass and the Putative Class members, is to operate vaccination sites across the nation and administer the COVID-19 vaccine to patients. The administration of the COVID-19 vaccine required Plaintiff to handle COVID-19 vaccines, syringes, needles, and tourniquets.

19. Defendants paid Bass and the Putative Class members on an hourly basis and classifies them as "non-exempt" under the FLSA.

20. Bass worked as a nurse administering the COVID-19 vaccine for Defendants from approximately January 2021 until April 2021.

21. Bass's typical regular schedule was to report to the vaccination site at 6:00 a.m. and to work, typically until at least 6:00 p.m., excluding travel time, five days per week. Bass and the putative class members worked on average about 20 hours of overtime per week for which they were routinely not compensated for "off the clock" work.

22. However, Plaintiff's time commitment to Defendants was actually 24/7. Although Plaintiff may not be scheduled to work on any given day, she was on call 24 hours a day, and seven days per week.

23. As stated above, Plaintiffs are not allowed to accurately record all of the time for which they were to be compensated. According to Defendants' policy, the nurse Plaintiffs, like Bass and the putative class defined herein, must travel to designated vaccination sites. Indeed, Plaintiff Bass was assigned to two different locations, Fort Lauderdale and Venice, and both required significant travel that should have been compensated by Defendants.

24. For example, Plaintiff Bass was first assigned to the Venice location and was informed that her travel to the location was compensable. Later, Defendants changed course and retroactively revoked their policy to compensate Plaintiff and the putative class defined herein. Shortly thereafter, Defendants assigned Plaintiff Bass to a vaccination site in Fort Lauderdale, a four to five hour drive from her home.

25. In accordance with Defendant's direction, Plaintiffs are required to report to their designated vaccination sites at specific times and requires Plaintiffs and the putative class herein to travel during their regular work hours.

26. Defendant Med-Call's policies emanate from its corporate office and are disbursed nationwide by its managers, including Defendant Dumpit.

27. As Defendant Med-Call's Chief Operating Office, Defendant Dumpit has control over the significant aspects of Defendant Med-Call's day-to-day

5

operations. For example, Defendant Dumpit was responsible for implementing "clock-in and clock-out" procedures dictating when Plaintiff and the putative class members' work day compensation began, and ended.

28. Defendant Dumpit had the power to hire and fire employees. He controlled employee work schedules, including by assigning hours and shifts. Not only that, as the COO he was ultimately responsible for the conditions of employment where Plaintiff and the putative class members worked.

29. As the COO, Defendant Dumpit also determined the rate and method of payment for Plaintiff and the putative class members. Defendant Dumpit also assisted with maintaining employment records for Defendant Med-Call.

30. Defendants classified Plaintiff, and the putative class defined herein, as non-exempt and eligible for overtime pay and specifically stated that, for purposes of clocking-in, Plaintiff's compensable time began to run when she left her house to travel to the designated vaccination site as directed by Defendants.

31. Similarly, Plaintiffs were then required to clock out immediately upon the conclusion of their last call of the day.

32. Plaintiffs' time was submitted via Defendants' system.

33. Specifically, Defendant Dumpit stated, on behalf of Defendant Med-Call in January 20, 2021 internal email, "I wanted to follow-up with an important update regarding your clock-in and clock-out procedures. The State of Florida representatives recently informed us that all nurses' shifts among all regions begin the moment they arrive to their command center and ends when they leave the

command center at the end of day. This is a change for what was initially communicated to you that your shift starts when you leave your residence and ends when you return home to your residence. This rule is in effect retroactively from the first day of your assignment."

34. Because Defendants' policy is to record only the time when Plaintiffs are at the designated vaccination site, they do not pay the Plaintiffs for all the compensable travel.

35. Defendants could easily and accurately record the actual time Plaintiffs spend travelling, for example, by paying them from the time they leave their residence and travel during their regular working hours. Upon information and belief, Defendants adhere to the same policy and practice with respect to Plaintiffs at all their other vaccination sites nationwide.

36. Defendants' policy and practice fails to pay overtime compensation and willfully fails to keep accurate time records. Defendants enjoyed ill-gained profits at the expense of its hourly employees.

37. In exchange for Plaintiff's services, Defendants agreed to pay Plaintiff a set wage.

38. Defendants failed to pay Plaintiff all wages owed to Plaintiff, including wages earned when they were not paid for compensable travel.

39. Plaintiff's unpaid constitute "wages" under Florida common law, as well as under Fla. Stat. § 448.08.

40. All Defendants' failure to pay Plaintiffs all of Plaintiffs' wages, including their hourly rate for all hours worked, was willful.

## COLLECTIVE ACTION ALLEGATIONS

41. Plaintiffs bring the FLSA claim as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) defined as follows:

> **All current and former hourly nurses who worked for Defendants any time during the last three (3) years within the United States at a designated vaccination site.**

42. The FLSA claim may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

43. Plaintiffs, individually and on behalf of all other similarly situated employees, seek relief on a collective basis challenging, among other FLSA violations, Defendants' practice of failing to accurately record all hour worked and failing to pay employees for all hours worked, including overtime compensation. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from the records of Defendants, and potential class members may easily and quickly be notified of the pendency of this action.

## RULE 23 CLASS ACTION ALLEGATIONS

44. Plaintiffs assert their Rule 23 class claim on behalf of the putative Classes defined as follow:

> **All persons employed by all Defendants denied compensation for work performed within four years of the filing of this complaint through the date of final judgment in this action.**

8

45. Plaintiffs are and have been members of the Putative Unpaid Wages Class ("Putative Rule 23 Class") described herein.

46. The number of persons in the Putative Rule 23 Classes herein is so numerous that joinder of all such persons would be impracticable. While the exact number and identities of all such persons are unknown to Plaintiffs at this time and can only be obtained through appropriate discovery, Plaintiffs are informed and believe, and on that basis allege, that the Rule 23 Classes herein include over 100 persons.

47. Disposition of Plaintiffs' claims in a class action will benefit all parties and the Court.

48. There is a well-defined community of interest presented by the Putative Rule 23 Classes herein that, among other things, each member of the Putative Rule 23 Classes have an interest in collecting unpaid wages, obtaining other appropriate legal relief for the harm of which Plaintiffs complaint, and obtaining other adequate compensation for the common damage which Plaintiffs and all other persons similarly situated have suffered as result of Defendants' actions.

49. A class action in this case in superior to any other available method for the fair and efficient adjudication of the claims presented herein.

50. The prosecution of separate actions by individual members of the Putative Rule 23 Classes herein would create a risk of inconsistent and/or varying

adjudications with respect to individual members of the Putative Rule 23 Classes which would or may establish incompatible standards of conduct for Defendants and which would also create a risk of adjudications with respect to individual members of the Putative Rule 23 Classes herein which would, as a practical matter, be dispositive of the interests of other members of the Putative Rule 23 Classes not parties to the particular individual adjudications, and/or would or may substantially impede or impair the ability of those members to protect their interests.

## **COUNT I – FLSA OVERTIME VIOLATION**

51. Plaintiffs re-assert and re-allege the allegations of paragraphs 1 through 40 above.

52. Plaintiffs bring this case as a collective action pursuant to 29 U.S.C. §216(b) to recover unpaid overtime compensation, liquidated damages, injunctive relief, attorneys' fees and costs, and other damages owed.

53. This action is properly maintained as a collective action because the Plaintiffs and are similarly situated with respect to job title, job description, training requirements, job duties, compensation plan, Defendants' failure to pay for travel time, Defendants' failure to pay overtime hours, and the wage and hour violations alleged in this Complaint, among other similarities.

54. Defendants violated the FLSA by failing to pay for all overtime hours worked. In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

55. Section 13 of the FLSA, codified at 29 U.S.C. § 13, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemption apply to Plaintiffs or employees.

56. Plaintiffs and all similarly situated employees are entitled to damages equal to the mandated overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether their conduct was prohibited by the FLSA.

57. Defendants acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, thereof, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).

58. Alternatively, should the Court find Defendants did not act willfully in failing to pay overtime pay, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

59. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, Defendants are liable pursuant to 29 U.S.C. § 216(b), together with an additional

amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## **PRAYER FOR RELIEF**

***WHEREFORE***, Plaintiffs and all employees similarly situated who join in this action demand:

a. Issuance of notice as soon as possible to all similarly-situated employees employed by Defendants during any portion of the three years immediately preceding the filing of this action. Generally, this notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit if they were not paid overtime compensation for all hours worked over forty in any week during the statutory period;

b. Judgment against Defendants for an amount equal to Plaintiffs' unpaid back wages at the applicable overtime rate;

c. Judgment against Defendants that their violation of the FLSA was willful;

d. An equal amount to the overtime damages as liquidated damages;

e. To the extent liquidated damages are not awarded, an award of prejudgment interest;

    f.    All costs and attorney's fees incurred in prosecuting these claims;

    g.    Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court; and

    i.    For such further relief as the Court deems just and equitable.

## COUNT II – UNPAID WAGES UNDER FLORIDA COMMON CLASS ACTION CLAIM
***(All Plaintiffs Against All Defendants)***

60. This claim is brought by all Plaintiffs on behalf of all similarly-situated employees who were not compensated for their work, and as a result were denied all of their wages.

61. Plaintiffs reallege and readopt the allegations above of this Complaint, as though fully set forth therein.

62. During the statutory period, Plaintiffs worked for all Defendants, and Defendants agreed to Pay Plaintiffs for Plaintiff's Services.

63. All defendants failed to pay Plaintiffs all "wages" owed to Plaintiffs, including Plaintiffs' amounts owed.

64. As a result of the foregoing, Plaintiffs have suffered damages.

***WHEREFORE,*** Plaintiffs demand:

    a.    A jury trial on all issues so triable.

    b.    That process issue, and that this Court take jurisdiction over the case; Judgment against Defendant for an amount equal to Plaintiff's unpaid back wages.

  c. All costs and attorneys' fees incurred in prosecuting these claims, in accordance with Fla. Stat. §448.08

  d. For such further relief as this Court deems just.

**DEMAND FOR A JURY TRIAL**

Plaintiffs hereby request a trial by jury on all issues so triable.

Dated this 31st day of January, 2022.

        Respectfully submitted,

        */s/ Brandon J. Hill*
        **BRANDON J. HILL**
        Florida Bar Number: 0037061
        Direct Dial: 813-337-7992
        **LUIS A. CABASSA**
        Florida Bar Number: 053643
        Direct No.: 813-379-2565
        **AMANDA E. HEYSTEK**
        Florida Bar Number: 0285020
        Direct Dial: 813-379-2560
        **WENZEL FENTON CABASSA, P.A.**
        1110 N. Florida Avenue, Suite 300
        Tampa, Florida 33602
        Main Number: 813-224-0431
        Facsimile: 813-229-8712
        Email: bhill@wfclaw.com
        Email: lcabassa@wfclaw.com
        Email: aheystek@wfclaw.com
        Email: gnichols@wfclaw.com
        **Attorneys for Plaintiff**